Copy mailed by chambers 8-28-23. DH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AL JAVIER,
                Plaintiff,

v.

ANTHONY RUSSO; SERGEANT JOSEPH
ROSINSKY; C.O WATKINS; C.O. JAMES
MORRISSEY; MARILYN KOPP; A.
RODRIGUEZ; and ANTHONY ANNUCCI,
                Defendants.
-------------------------------------------------------------x

**OPINION AND ORDER**

21 CV 7097 (VB)

Briccetti, J.:

    Plaintiff Al Javier, proceeding pro se and in forma pauperis, brings this Section 1983

action against defendants Sergeant ("Sgt.") Joseph Rosinsky, Deputy Superintendent Anthony

Russo, Correction Officer ("C.O.") G. Watkins, C.O. James Morrissey, Hearing Officer Marilyn

Kopp, New York State Department of Corrections and Community Supervision ("DOCCS")

Commissioner Anthony Annucci, and DOCCS Disciplinary Director A. Rodriguez.

    Plaintiff alleges his constitutional rights were violated when defendants pepper sprayed

him prior to searching his cell and thereafter subjected him to constitutionally deficient

disciplinary proceedings based on incorrect misbehavior reports, resulting in his "keeplock"

confinement for forty-five days and a loss of privileges for sixty days. Plaintiff seeks damages

and injunctive relief, including an order that defendants be trained not to use excessive force.

    Now pending before the Court is defendants' motion to dismiss the amended complaint

pursuant to Rules Rule 12(b)(1) and 12(b)(6).[1]  (Doc. #36).

---

[1]    Although defendants invoke only Rule 12(b)(6) in their motion, their argument regarding
suits against officers in their official capacities "is more appropriately characterized as a [motion
for] dismissal under Rule 12(b)(1), as it [is] based on sovereign immunity." Morabito v. New
York, 803 F. App'x 463, 465 n.2 (2d Cir. 2020) (summary order).  However, the "distinction has
no practical effect in this case because whether brought under either subdivision, the Court

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, documents attached thereto, and certain factual allegations in plaintiff's opposition, and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

During the complained-of events, plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven") in Stormville, New York.

Plaintiff alleges on the morning of March 1, 2020, defendant Watkins saw another inmate put unspecified contraband in plaintiff's cell. (Doc. #9 ("Am. Compl.") at ECF 5.).[3]  According

---

considers on this motion only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor." Crichlow v. Annucci, 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022).

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

[2]    In addition to the amended complaint, courts may consider a pro se plaintiff's other submissions, such as any opposition to a motion to dismiss, when "evaluating the legal sufficiency of a pro se plaintiff's claims." See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases).  However, new allegations in plaintiff's opposition are only considered to the extent they are consistent with those in the amended complaint. Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 28, 2016); see also Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("Although a pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint.").

[3]    To the extent this opinion and order does not cite to numbered paragraphs in the amended complaint, citations to page numbers in the amended complaint correspond to the pagination automatically generated by the Court's Electronic Filing ("ECF") System.

to a memo from defendant Rosinsky to Green Haven Superintendent Royce, dated March 1, 2020, and attached to the amended complaint (id. at ECF 56), the contraband consisted of bottles of a "red fizzy liquid."

Plaintiff alleges he was not in his cell at this time because he was expecting a visitor. When plaintiff returned to his cell and saw the alleged contraband, he began to flush it down the toilet rather than risk "be[ing] falsely accused" and jeopardizing his visit.  (Am. Compl. at ECF 5).

C.O. Watkins allegedly "pulled her response pin (from her radio)," alerting other officers to come to plaintiff's cell.  (Am. Compl. at ECF 5).  C.O. Morrissey allegedly responded and, without any warning to plaintiff, who was locked in his cell, began spraying plaintiff through the bars of his cell with pepper spray "profusely [and] unrelent[ing]ly."  (Id.).  Plaintiff alleges Morrisey and Watkins allowed him to forcefully run into bars, walls, and doors after getting sprayed.  Plaintiff was then searched and taken to the medical clinic, where he was treated before being sent back to his cell.  According to plaintiff, only at this point did the guards actually attempt to examine the bottles to see if they did in fact contain contraband.  Defendants maintain, but could not ultimately confirm, that the liquid was a form of homemade alcohol.  (Id. at ECF 5, 48).

Plaintiff was issued a misbehavior report as result.  (Am. Compl. at ECF 5, 59, 60).  It does not state that Watkins had observed someone place contraband in plaintiff's cell, or, according to plaintiff, explain why Morrissey "had to use such excessive means."  (Id. at ECF 5)

Plaintiff alleges Tier III disciplinary hearings were conducted on the misbehavior reports. Defendant Russo, who at that time was the deputy superintendent at Green Haven, allegedly "chose" defendant Kopp as the hearing officer.  (Am. Compl. at ECF 5).  According to plaintiff,

he was adjudged guilty by Kopp and sentenced to forty-five days keeplock and a loss of privileges for sixty days, notwithstanding that the individual who put contraband in plaintiff's cell and defendant Watkins testified about this placement of contraband at the hearing. (Id.; Doc. #52 ("Pl. Opp.") at 12). Plaintiff also was allegedly dismissed from "therapeutic and voluntary" programs and services that would have prepared him for parole. (Id.).

Plaintiff contends he has been depressed since the March 1, 2020, incident, and has complained to Green Haven medical staff regarding vision issues and shortness of breath, he allegedly continues to experience since the incident. (Am. Compl. at ECF 6). He also allegedly experiences anxiety and nervousness whenever a correction officer stops at his cell because of his fear of future assaults.

Plaintiff alleges he filed an Article 78 proceeding challenging the disciplinary determination, which ultimately was administratively reversed. (Am. Compl. at ECF 5). But plaintiff nevertheless served his entire disciplinary punishment, which he attributes to the alleged failure of Rodriguez and Annucci, as appeal officers, to determine that there was no hearing record and reverse the decision at the first appeal level.

## DISCUSSION

I.      Standard of Review

    A.      Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011)).[4] "[F]ederal courts are courts of limited

---

[4]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (quoting Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the Court should resolve the Rule 12(b)(1) challenge first. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.     Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to

raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules

permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights

violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a

pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.

2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.    Subject Matter Jurisdiction

Defendants first argue the Eleventh Amendment bars plaintiff's Section 1983 claims for

damages against defendants Watkins, Kopp, and Morrissey in their official capacities, and thus,

the Court lacks subject matter jurisdiction over these claims. (Doc. #38 ("Defs. Mem.") at 7–8).[5]

The Court agrees.

"[A]s a general rule, state governments may not be sued in federal court unless they have

waived their Eleventh Amendment immunity, or unless Congress has abrogated the states'

Eleventh Amendment immunity." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009). "The

---

[5]    Plaintiff's claims for money damages against defendants Annucci, Russo, Rodriguez, and
Rosinsky in their official capacities have already been dismissed with prejudice. (Doc. #6
("Order to Amend") at 5, 7).

immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Id. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977)). Nonetheless, state officials can still be subject to suit in their official capacities for injunctive or other prospective relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State."). To seek injunctive relief against state officials in their official capacities, a plaintiff must "allege an ongoing violation of federal law." In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).

Here, plaintiff seeks monetary damages against defendants Watkins, Kopp, and Morrissey and injunctive relief against all defendants in the form of training on the use of force and dismissal from employment.

The Eleventh Amendment bars plaintiff's claims for money damages against Watkins, Kopp, and Morrissey, because plaintiff's claims for damages concern solely acts taken in their official capacities. Moreover, because all the events complained of describe solely past acts by defendants, plaintiff has failed to allege an ongoing violation of federal law.[6]

---

[6]    Plaintiff's opposition asserts new state-law claims for negligence and assault carried out by defendants. However, these claims are barred by Section 24 of New York Correction Law. Barnes v. Uzu, 2022 WL 784036, at *18 (S.D.N.Y. Mar. 15, 2022). New York Correction Law Section 24 states "[n]o civil action shall be brought" state officers or employees in "[their] personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." "The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983." Sughrim v. New York, 503 F. Supp. 3d 68, 98 (S.D.N.Y. 2020). Here, plaintiff does not allege any defendant acted outside the scope of their DOCCS

Accordingly, plaintiff's claims for monetary damages against defendants in their official capacities and claims for injunctive relief must be dismissed.

III.   Failure to State a Claim

The Court liberally construes the complaint and opposition to assert Section 1983 claims for:  (i) First Amendment retaliation, (ii) excessive force in violation of the Eighth Amendment, and (iii) Fourteenth Amendment procedural due process violations arising out of disciplinary proceedings.

A.   Personal Involvement of Supervisory Defendants

Defendants argue plaintiff fails to state a claim against defendants Annucci, Russo, Rodriguez, and Rosinsky in their personal capacities because plaintiff has not alleged facts sufficient to show these defendants, as supervisors, were personally involved in any purported constitutional violations.

The Court agrees.

To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in the alleged constitutional deprivation.  See Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. Tangreti v. Bachmann, 983 F.3d 609, 619–20 (2d Cir. 2020); see also Perkins v. City of N.Y., 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017) ("[When] the complaint names a defendant

_____

employment.  Accordingly, to the extent plaintiff purports to bring state law claims against defendants, they are dismissed.

in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.").

Plaintiff alleges these defendants failed to supervise their employees and that this failure made it possible for their employees to use excessive force in the form of pepper spraying him and adjudge plaintiff guilty at a disciplinary hearing without sufficient evidence. These allegations are insufficient to hold these supervisory defendants liable under Section 1983. See, e.g., Smart v. Annucci, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (dismissing pro se complaint against defendants, prison officials who allegedly failed to act on the plaintiff's complaints, because "[f]ailing to correct another officer's violation does not suffice" to establish a supervisor's direct violation of a plaintiff's constitutional rights).

Plaintiff vaguely suggests that, by way of failing to properly manage their subordinates, Annucci, Russo, Rodriguez, and Rosinsky are liable because they "allowed an unconstitutional policy" to perpetuate. (Pl. Opp. at 4). But neither the amended complaint nor the opposition contains factual allegations from which it may be reasonably inferred these officials were responsible for making relevant policies that resulted in a violation of plaintiff's constitutional rights. See Tangreti v. Bachmann, 983 F.3d at 619 ("[I]t is not enough for [Plaintiff] to show that [Defendant] was negligent, or even grossly negligent, in [their] supervision of [the offending parties].").

Thus, even assuming these defendants had subjective knowledge of the pepper spraying, the purportedly false disciplinary reports, or the allegedly deficient disciplinary hearing, plaintiff's assertion that an alleged lack of supervision caused the constitutional violations is conclusory, and plaintiff fails to provide further facts to support these defendants' direct

involvement. Ford v. Aramark, 2020 WL 377882, at *14 (S.D.N.Y. Jan. 23, 2020) (dismissing claim against prison official where "the Complaint lack[ed] any non-conclusory allegation" about that official's personal involvement in any constitutional violation).

Accordingly, the claims against Annucci, Russo, Rodriguez, and Rosinsky must be dismissed without prejudice for lack of personal involvement.[7]

B.    First Amendment Retaliation Claim

Defendants argue plaintiff fails to state a First Amendment retaliation claim against any defendant.

The Court agrees.

"Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." Bartley v. Collins, 2006 WL 1289256, at *4 (S.D.N.Y. May 10, 2006) (citing Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002)). To state a First Amendment retaliation claim, plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . defendant took adverse action against . . . plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014). "[B]ecause

---

[7]      Plaintiff does allege that defendants Annucci and Rodriguez were personally involved in affirming the adverse disciplinary determination. His allegation that they failed to determine that the record was incomplete and reverse the disciplinary decision, however, does not plausibly state a claim for a violation of his right to due process—among other reasons, because when the government deprives a plaintiff of some interest pursuant to an established procedure, due process is generally satisfied so long as some form of hearing is provided before the individual is finally deprived of the property interest. Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011). Moreover, although plaintiff does allege Rosinski failed to investigate the facts, due process requires only "some notice of the charges against [prisoner] and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Taylor v. Rodriguez, 238 F.3d 188, 192 (2d Cir. 2001). There is no indication in the parties' submissions that plaintiff did not receive that.

virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015); see also Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike."). Accordingly, First Amendment retaliation claims must be "supported by specific and detailed factual allegations" and may not be stated "in wholly conclusory terms." Dolan v. Connolly, 794 F.3d at 295.

Plaintiff alleges he filed grievances—protected speech—and then was allegedly wrongfully confined for forty-five days in keeplock, which, if causally related to protected speech, could comprise retaliatory adverse acts. However, he fails plausibly to plead a causal connection between any protected speech and these alleged adverse actions. Aside from "the apparent temporal proximity between the complaint and defendants' purported action, plaintiff has alleged "no other facts to support the inference" that any conduct by defendants "was motivated by plaintiff's grievance," which is insufficient. Salahuddin v. Mead, 2002 WL 1968329, at *6 (S.D.N.Y. Aug. 26, 2002); see also Nunez v. Goord, 172 F. Supp. 2d 417, 432 (S.D.N.Y. 2001) (temporal proximity alone is insufficient to establish causation).

Accordingly, plaintiff's First Amendment retaliation claim must be dismissed.

C.     Eighth Amendment Excessive Force Claim

Defendants argue plaintiff fails to state an excessive force claim under the Eighth Amendment against C.O. Morrissey in his personal capacity because the pepper spraying was a

de minimis use of force that was employed only to enforce compliance with the orders of corrections officers.

The Court disagrees.

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments," U.S. Const. Amend. VIII, and bars the "unnecessary and wanton infliction of pain," Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002).

To establish a constitutional claim of excessive force under the Eighth Amendment, a plaintiff must allege facts that satisfy two elements.  See Hudson v. McMillian, 503 U.S. 1, 8–10 (1992).  First, a plaintiff must allege that the use of force was "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1996) ("Not every push or shove . . . violates a prisoner's constitutional right.").  Generally, the force used must be a "deliberate use of force" that is both "excessive and unjustified."  Whitley v. Albers, 475 U.S. 312, 327 (1986).

Second, a plaintiff must plead facts suggesting that the officer who used force acted "maliciously and sadistically" to cause the "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. at 7–8.  Generally, "the test for wantonness 'is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Miller, 818 F.3d at 63 (quoting Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003)).

Here, plaintiff alleges that when C.O. Watkins called for a response to plaintiff's cell,[8] Morrissey responded, and, while plaintiff was locked in his cell and without any warning,

---

[8]     Plaintiff does not otherwise allege C. O. Watkins was involved in the pepper spraying, and as such, fails to state a claim against her for excessive force due to lack of personal involvement.

Morrissey immediately "took out his pepper spray and began spraying [plaintiff] through the bars of his cell, profusely [and] unrelentingly." (Am. Compl. at ECF 5).

A correction officer's use of pepper spray may constitute an objectively serious, unnecessary, and wanton infliction of pain in violation of the Eighth Amendment. See Tracy v. Freshwater, 623 F.3d 90, 98–99 (2d Cir. 2010) (denying summary judgment on excessive force claim based on pepper spraying because plaintiff "had already been handcuffed and was offering no physical resistance of police commands"); Alston v. Daniels, 2015 WL 7257896, at *4 (D. Conn. Nov. 17, 2015) ("In the Second Circuit, a prison guard's use of a chemical agent . . . on an inmate may, under certain circumstances, constitute unnecessary and wanton infliction of pain in violation of the Eighth Amendment.").

Here, plaintiff alleges he was locked in his cell when he was pepper sprayed, he posed no threat to the officers, and defendants saw another inmate plant the alleged contraband in plaintiff's cell. Drawing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has plausibly pleaded Morrissey acted with a culpable state of mind, and the conduct alleged was not only unnecessary but also objectively harmful or sufficiently serious.

Accordingly plaintiff's excessive force claim may proceed against Morrissey.

D.       Fourteenth Amendment Procedural Due Process Claim

Defendants argue plaintiff fails to state a procedural due process claim against defendant Kopp in her personal capacity because plaintiff's forty-five day confinement in keeplock and sixty-day loss of privileges do not comprise deprivation of a liberty interest protected by the Fourteenth Amendment, and that, even if it did, plaintiff was afforded due process.

The Court agrees.

13

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process claim, plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017).

An incarcerated individual "has the right not to be deprived of a protected liberty interest without due process of law." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). Generally, however, an incarcerated individual "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Willey v. Kirkpatrick, 801 F.3d 51, 63 (2d Cir. 2015). Therefore, because "[t]he issuance of false misbehavior reports . . . is insufficient on its own to establish a denial of due process," Mitchell v. Senkowski, 158 Fed. App'x 346, 349 (2d Cir. 2005), a false misbehavior report violates due process only where plaintiff can show that "he was disciplined without adequate due process as a result of the report." Willey v. Kirkpatrick, 801 F.3d at 63.

To determine whether a disciplinary action violates plaintiff's protected liberty interest, this Court must consider whether the "discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009). Specifically, the Court should weigh "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the "duration of the disciplinary segregation compared to discretionary confinement." Id. Recognizing that an unusually long special housing unit ("SHU") sentence can by itself constitute an "atypical and significant hardship," the Second Circuit has also ruled that shorter SHU confinements, i.e., less than 101 days, can still qualify as an "atypical and significant hardship" where "the conditions

were more severe than the normal SHU conditions." Palmer v. Richards, 364 F.3d 60, 65 (2d Cir. 2004)

Here, plaintiff's forty-five day keeplock confinement and attendant loss of privileges do not allege an "atypical and significant hardship" sufficient to plead he was deprived of a liberty interest, and thus, cannot sustain a claim that the disciplinary action violated his due process rights. See, e.g., Thomas v. DeCastro, 2018 WL 1322207, at *6 (S.D.N.Y. Mar. 13, 2018) (no liberty interest when plaintiff alleged he spent ten days in keeplock without phones, packages, and commissary); Smart v. Annucci, 2021 WL 260105, at *5 (no liberty interest in forty days SHU confinement when plaintiff did not allege harsher than normal SHU conditions).

In addition, even if plaintiff had sufficiently pleaded that he was deprived of a liberty interest, based on the allegations in the amended complaint, he was afforded sufficient due process. Plaintiff claims Kopp did not dismiss the charges during the hearing even though two witnesses—defendant Watkins and the individual who supposedly put the contraband into plaintiff's cell—testified that a third party placed contraband in plaintiff's cell.[9] He further asserts in his opposition that Kopp violated his due process rights because the entire hearing was not recorded. (Pl. Opp. at 10–12).

The requirements of due process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. Brooks v. Prack, 77 F. Supp. 3d 301, 315 (W.D.N.Y. 2014). Here,

---

[9]     In his opposition, plaintiff also appears to raise a conspiracy claim on this basis, asserting that defendants Watkins, Morrisey, Rosinsky, and Rodriguez conspired "to defraud" by failing to report everything in the disciplinary report to Kopp. (Pl. Opp. at 10–11). However, his conclusory allegations as to each of these defendants' roles in the supposed conspiracy, without articulating any purpose of the conspiracy or agreement between these defendants, are insufficient to state a Section 1983 claim. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 328 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").

based on Sgt. Rosinsky's memo, plaintiff had contraband in his cell. Moreover, based on plaintiff's allegations, he was permitted to introduce the testimony of witnesses in his favor at an evidentiary hearing on the misbehavior report. Therefore, plaintiff has not pleaded he was deprived of any due process during his disciplinary proceeding. See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (the procedural due process afforded a prisoner charged with a violation in a disciplinary proceeding consists of: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken").

And the law is settled that the failure to follow a DOCCS Directive or prison regulation, such as recording the hearing, does not give rise to a federal constitutional claim. Hyman v. Holder, 2001 WL 262665, at **4, 6 (S.D.N.Y. Mar. 15, 2001) (holding that failure to follow a DOCCS prison regulation "does not give rise to a constitutional violation"). Thus, to the extent that plaintiff also brings claims for failure to comply with DOCCS directives or related regulations, those claims are not actionable.

Accordingly, plaintiff's procedural due process claim must be dismissed.

IV.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be

stated." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).  But "a futile request to replead should be denied." <u>Id</u>.

Here, the amended complaint, liberally construed, contains enough allegations suggesting plaintiff potentially has First Amendment retaliation and Fourteenth Amendment procedural due process claims against defendants in their individual capacity that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112.

Accordingly, the Court grants plaintiff leave to file a second amended complaint respecting these two claims, as well as the Eighth Amendment excessive force claim against defendant Morrissey, **only**.

**The second amended complaint will completely replace, not merely supplement, the amended complaint.**  Therefore, plaintiff must include in the second amended complaint all information necessary for these claims, including all relevant allegations from his amended complaint and opposition to the motion to dismiss.

## <u>CONCLUSION</u>

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

All of plaintiff's claims are dismissed, except for his Eighth Amendment excessive force claim against defendant Morrissey.

However, plaintiff is granted leave to amend his complaint in accordance with the instructions above.  By October 30, 2023, plaintiff shall file a second amended complaint using the attached form.  If plaintiff fails to file a second amended complaint by October 30, 2023, the Court will deem the amended complaint to be the operative complaint, and only the excessive force claim against defendant Morrissey will proceed.

The deadline for defendant Morrissey to file an answer to the amended complaint is STAYED pending plaintiff's deadline to file a second amended complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion. (Doc. #36).

Chambers will mail a copy of this Opinion and Order, and all unpublished opinions cited, to plaintiff at the address on the docket.

Dated:  August 28, 2023
        White Plains, NY

                                    SO ORDERED:

                                    Vincent L. Briccetti
                                    United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

No. 21 CV 7097 (VB)
(To be filled out by Clerk's Office)

**SECOND AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name          Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City          State          Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

Defendant 2:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

Defendant 3:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

Defendant 4:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:  _____

Date(s) of occurrence:  _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.


| Dated | Plaintiff's Signature |
|-------|----------------------|

| First Name | Middle Initial | Last Name |
|------------|----------------|-----------|

Prison Address

| County, City | State | Zip Code |
|--------------|-------|----------|


Date on which I am delivering this complaint to prison authorities for mailing: _____