UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
AL JAVIER,                                        :
                            Plaintiff,            :
v.                                                :
                                                  :       **OPINION AND ORDER**
ANTHONY RUSSO; SGT. ROSINSKY; C.O.                :
WATKINS; C.O. MORRISSEY; M. KOPP; and             :       21 CV 7097 (VB)
A. RODRIGUEZ,                                     :
                            Defendants.           :
--------------------------------------------------------------x

Briccetti, J:

        Plaintiff Al Javier, proceeding pro se and in forma pauperis, brings this Section 1983

action against defendants Anthony Russo, Sergeant Rosinsky,[1] M. Kopp, A. Rodriguez, and

Correction Officers Watkins and Morrissey, all employees of the New York State Department of

Corrections and Community Supervision ("DOCCS").  Plaintiff alleges defendants subjected

him to excessive force, denied him procedural due process during a disciplinary hearing, and

destroyed or falsified reports and official records in an effort to conceal their misconduct.

        Before the Court is defendants' partial motion to dismiss the second amended complaint

(the "SAC") pursuant to Rules 12(b)(1) and 12(b)(6).  (Doc. #64).

        For the reasons set forth below, the motion is GRANTED.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     In the second amended complaint, plaintiff incorrectly identified defendant Sergeant
Rosinsky as Sergeant "Ronsinsky."  (Doc. #58).  The Court refers to this defendant by his proper
name as set forth in defendants' memorandum of law.  (Doc. #65 at 1).

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and certain factual allegations in plaintiff's opposition.[2] The Court draws all reasonable inferences in plaintiff's favor, as summarized below.

At all relevant times, plaintiff was incarcerated at Green Haven Correctional Facility in Stormville, New York ("Green Haven").

I.    Alleged Excessive Force

On March 1, 2020, plaintiff allegedly exited his cell when it was opened as usual for the morning meal.  However, because plaintiff was expecting a visit that morning, he "walked to the front of the company" to inform an officer he would be skipping the meal.  (Doc. #58 ("SAC") ¶ 7).  When he returned to his cell, plaintiff allegedly found an "unfamiliar bag" containing bottles of a "liquid substance."  (Id. ¶¶ 7–8).

According to plaintiff, defendant Watkins was walking by his cell at this time, so plaintiff began pouring the liquid into the toilet bowl as Watkins approached.  Seeing plaintiff disposing of the substance, Watkins allegedly ordered him to stop, called for his cell door to be opened, and "called for an emergency response."  (SAC ¶ 8).  Plaintiff alleges he had complied with

_____

[2]    Because plaintiff is proceeding pro se, the Court considers new allegations in his opposition, to the extent they are consistent with the SAC.  See Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016); see also Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (Although "[a] pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint.").

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

Watkins's order to stop pouring out the liquid, when defendant Morrissey arrived at his cell. (Doc. #69 ¶ 4).  Plaintiff contends Morrissey pepper-sprayed him, even though he was compliant, "posed no threat," and was still in his cell.  (SAC ¶ 13).  The pepper-spray allegedly left plaintiff unable to see and barely able to breathe until he was taken to the medical clinic.

II.     Disciplinary Proceedings

The following day, on March 2, 2020, plaintiff received a misbehavior report charging him with disorderly conduct, creating a disturbance, interfering with an employee, refusing a direct order, refusing a search or frisk, possession of alcohol or an intoxicant, and possession of contraband.  (SAC ¶ 11).  Plaintiff pleaded not guilty to these violations at a disciplinary hearing, which began on March 3, 2020.

At the hearing, plaintiff alleges he called as a witness an inmate named Jacquis Lowery. Lowery allegedly testified he had placed the bag with the liquid substance in plaintiff's cell without plaintiff's knowledge.  Plaintiff also alleges Lowery told the hearing officer, defendant Kopp, that Watkins had seen Lowery put the bag in plaintiff's cell.  According to plaintiff, Watkins failed to include anything about Lowery in her misbehavior report regarding the incident.

After the hearing was adjourned for the day, plaintiff alleges he spoke to defendant Rosinsky, the area supervisor for plaintiff's housing block.  Plaintiff alleges Rosinsky said Watkins had called him when Watkins saw Lowery place the contraband in plaintiff's cell, and Rosinsky had authorized Watkins to do a search.  According to plaintiff, Rosinsky wrote a report

about the incident, but he omitted the information about Lowery in an "attempt to cover up his subordinate[s'] violation of plaintiff's rights."  (SAC ¶ 32).

At some point later, plaintiff alleges he spoke to defendant Russo, the deputy superintendent of security, who was making rounds.  Plaintiff allegedly informed Russo about the March 1, 2020, incident, including how Lowery had taken responsibility for the contraband. Plaintiff alleges he showed Russo the misbehavior report, in which Watkins fails to mention seeing Lowery.  Russo allegedly told plaintiff he would "look into the matter and speak to the officers involved," but plaintiff never received any communication from him after that day. (SAC ¶ 19).

When plaintiff's disciplinary hearing resumed, defendants Watkins and Morrissey were called to testify.  Plaintiff alleges Watkins admitted to observing Lowery enter plaintiff's cell with a bag, and Morrissey falsely testified he had to use pepper-spray "to prevent plaintiff from disposing of the liquid substance."  (SAC ¶ 21).

Plaintiff contends he asked defendant Kopp for "relevant documents and statements" in connection with the hearing, but certain reports were not disclosed to him.  (SAC ¶ 22).  Kopp also allegedly reviewed Watkins's and Morrissey's body camera recordings, but she would not permit plaintiff to see the footage.

III.   Post-Hearing Appeals

At the conclusion of the hearing, Kopp found plaintiff guilty of the charged disciplinary violations and sentenced him to sixty days in keeplock confinement, with fifteen days suspended, as well as sixty days' loss of package, phone, and commissary privileges.

Plaintiff alleges he appealed the hearing determination to defendant Rodriguez, who affirmed it.  Plaintiff then commenced an Article 78 proceeding in New York state court,

challenging the outcome of his disciplinary hearing.  According to plaintiff, during the state court

proceedings, "it was discovered that the defendants did not maintain a copy of the hearing

records."  (SAC ¶ 28).  Accordingly, Rodriguez administratively reversed Kopp's determination

on December 22, 2020.  Plaintiff alleges Kopp destroyed the hearing records to cover up the

"illegal and unconstitutional actions" of Watkins, Morrissey, and Rosinsky.  (Id. at ECF 15).[3]

IV.    Alleged Patterns of Misconduct at Green Haven

        In addition to the constitutional violations he claims he experienced personally, plaintiff

also contends there is a "history and pattern" of misconduct among staff at Green Haven.  (SAC

¶ 33).  According to plaintiff, there is a "high volume" of excessive force incidents, and staff

frequently falsify misbehavior reports and "make false statements to cover up" illegal conduct.

(Id. ¶ 35).  Plaintiff asserts this pattern is the result of "systematic, gross inadequacies" in the

training and supervision of correction officers at Green Haven.  (Id. ¶ 38).

**DISCUSSION**

I.    Standard of Review

        A.    Rule 12(b)(1)

        "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v.

Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).  "[F]ederal courts are courts of limited

jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution

or Congress."  Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d

56, 62 (2d Cir. 2009) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374

---

[3]    To the extent this Opinion and Order does not cite to numbered paragraphs in the SAC, citations to page numbers in the SAC correspond to the pagination automatically generated by the Court's Electronic Filing ("ECF") System.

(1978)).  The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(1) motion at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." Buday v. N.Y Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the Court should resolve the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.      Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.     Subject Matter Jurisdiction

Defendants argue plaintiff's official-capacity claims must be dismissed for lack of subject matter jurisdiction because these claims are barred by the Eleventh Amendment.

The Court agrees.[4]

A.      Legal Standard

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogated the states' Eleventh Amendment immunity."  Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009).  As relevant here, "the immunity recognized by the Eleventh Amendment extends beyond the states themselves" to state agents acting in their official capacities.  Id.  New York has not waived its

---

[4]     As discussed below, the Court dismisses many of the claims raised in the SAC—including claims against defendants in their official capacities—because plaintiff was not given leave to replead or add these claims.  However, jurisdictional challenges must be addressed first, so the Court considers Eleventh Amendment immunity with respect to all of plaintiff's official-capacity claims, notwithstanding whether these claims are otherwise proper.

Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983.  Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977).

Nonetheless, state officials may still be subject to suit in their official capacities for injunctive or other prospective relief.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State.").  However, to "avoid the Eleventh Amendment bar to suit," a plaintiff bringing an official-capacity claim must "seek relief properly characterized as prospective" and "allege an ongoing violation of federal law."  In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).

B.     Analysis

Here, plaintiff sues defendants in their official and individual capacities, seeking both money damages and injunctive relief.

First, the Eleventh Amendment bars plaintiff's claims for money damages against all defendants sued in their official capacities.  See, e.g., Exxon Mobil Corp. v. Healey, 28 F.4th 383, 392 (2d Cir. 2022).

Second, although plaintiff arguably seeks prospective injunctive relief,[5] he has not plausibly alleged an ongoing violation of federal law.  Liberally construed, plaintiff alleges staff at Green Haven have a "pattern" of using excessive force against inmates, filing fabricated misbehavior reports, and falsifying documents.  Plaintiff contends defendant Russo, in particular, had access to data demonstrating the frequency of use-of-force incidents at Green Haven.

---

[5]     Liberally read, plaintiff seeks an injunction requiring defendants to be (i) terminated from their positions at DOCCS; (ii) retrained in the use of force and "proper procedure in using chemical agents"; and (iii) prosecuted for "knowingly and intentionally falsifying documents and reports."  (SAC at ECF 17).

However, according to plaintiff, Russo "took no corrective [or] preventive measures" to address "systematic, gross inadequacies" in the training and supervision of correction officers.  (SAC ¶¶ 33, 38; Doc. #69 ¶¶ 17–18).

These allegations do not permit the Court to reasonably infer defendants are engaged in a <u>continuing</u> pattern of unconstitutional behavior.  Prior misconduct, without more, is insufficient to plead an ongoing violation of federal law.[6]  <u>See, e.g.</u>, <u>Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Hum. Servs.</u>, 2023 WL 4422790, at *7 (S.D.N.Y. July 10, 2023) (collecting cases).  Therefore, plaintiff may not seek injunctive relief against defendants in their official capacities.  <u>City of Shelton v. Hughes</u>, 578 F. App'x 53, 55 (2d Cir. 2014) (summary order).

Accordingly, plaintiff's official-capacity claims against all defendants must be dismissed for lack of subject matter jurisdiction.

III.    <u>Claims Pleaded Without Leave to Amend</u>

At the outset, the Court must address those claims in the SAC which plaintiff was not given leave to amend, replead, or add.  By Opinion and Order dated August 28, 2023, the Court dismissed all of the claims in plaintiff's first amended complaint, except for his Eighth Amendment excessive force claim against defendant Morrissey in his individual capacity.  (Doc. #57).  The Court did grant plaintiff leave to amend, but only for the limited purpose of repleading his First Amendment retaliation and Fourteenth Amendment procedural due process

---

[6]    Plaintiff filed a declaration with his opposition to the instant motion, and he attached as exhibits press releases regarding criminal charges filed against former Green Haven officials for assault and falsification of records.  (Doc. #69 at ECF 7–9).  Setting aside whether these are documents the Court may consider on a motion to dismiss, they do alter the conclusion.  The press releases, like the SAC, allege <u>past</u> misconduct.  They do not contain facts which, if true, would imply continuing violations of federal law.

claims against defendants in their individual capacities.  (Id. at 17).  The SAC, however, asserts

several other claims, including many the Court has already considered and dismissed.

The Court has inherent authority "to dismiss claims that exceed a leave to amend."

Bravo v. Established Burger One, LLC, 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013)

(collecting cases).  Here, plaintiff had an opportunity to amend once as of right, and he was then

permitted to replead the two claims as to which amendment would not be futile.  See Cuoco v.

Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).  Plaintiff explicitly declined to revise his First

Amendment retaliation claim, opting only to amend the Fourteenth Amendment procedural due

process claim.  (See Doc. #68 at 2 ("Plaintiff in his Second Amended complaint does not allege

any First Amendment retaliation claims.")).  And, as the Court previously held, plaintiff's Eighth

Amendment excessive force claim against Morrissey in his individual capacity may proceed.

Accordingly, any other claims alleged in the SAC are dismissed because they are not properly

before the Court.  See Palacio v. City of New York, 489 F. Supp. 2d 335, 340 n.3 (S.D.N.Y.

2007); McCray v. Patrolman N.A. Caparo, 761 F. App'x 27, 30 (2d Cir. 2019) (summary order).

IV.    Fourteenth Amendment Due Process Claim

Plaintiff has not adequately pleaded a Fourteenth Amendment procedural due process

claim because he has not plausibly alleged he was deprived of a protected liberty interest.[7]

A.    Legal Standard

The Fourteenth Amendment requires "that a deprivation of life, liberty, or property be

---

[7]    Defendants argue plaintiff has not properly alleged their personal involvement in any
constitutional violation, in part, because plaintiff has not pleaded the deprivation of a protected
liberty interest.  As discussed herein, the Court agrees plaintiff has not plausibly alleged he was
deprived of a liberty interest.  The Court need not reach defendants' other specific arguments
regarding personal involvement because these concern claims plaintiff was not given explicit
leave to amend, replead, or add.

preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010). To establish a violation of his due process rights, plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

A prisoner's liberty interest is "implicated" by prison discipline "if it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." J.S. v. T'Kach, 714 F.3d 99, 106 (2d Cir. 2013) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Although there is no bright-line rule for determining when a term of disciplinary confinement rises to the level of a constitutional violation, courts consider both the duration and the conditions of confinement. In the Second Circuit, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009).

B.     Analysis

Here, plaintiff alleges he was sentenced to sixty days of keeplock confinement, with fifteen days suspended, and sixty days' loss of package, phone, and commissary privileges. (SAC ¶ 26). According to plaintiff, during his keeplock sentence, he was confined to his cell for twenty-three hours a day; he was prevented from attending religious services or therapeutic programs; he was denied recreation; and he was unable to communicate with his friends, family, or other inmates. (Id. ¶ 27; Doc. #68 at 5). Plaintiff alleges he experienced a great deal of distress, particularly because he lost family and friends to COVID-19 while he was in keeplock. According to plaintiff, he also "experienced heightened anxiety [and] depression" because he

was confined to the same cell in which he was assaulted, and the officers involved in the assault "were the ones to serve plaintiff his meals."  (Doc. #68 at 4).

Even drawing all reasonable inferences in his favor, plaintiff has not alleged his protected liberty interests were implicated.  Plaintiff's term of confinement—forty-five days in keeplock—is not "a sufficient departure from the ordinary incidents of prison life," absent unusually harsh conditions.  Cf. Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000).  Although unpleasant and uncomfortable, as alleged, the conditions of plaintiff's confinement were consistent with normal disciplinary segregation.  See id. at 230 (describing, among other things, twenty-three-hour lockdown, loss of various privileges, and no out-of-cell programming as typical conditions); Frazier v. Coughlin, 81 F.3d 313, 315 (2d Cir. 1996) (finding no atypical hardship when plaintiff lost commissary, recreation, package, and phone privileges while confined in the Special Housing Unit).  Because plaintiff has not plausibly alleged his liberty interests were implicated by the duration or conditions of his keeplock confinement, he cannot state a claim against defendants for violating his procedural due process rights in imposing this sentence.  See, e.g., Smolen v. Wesley, 2019 WL 4727311, at *13 (S.D.N.Y. Sept. 25, 2019) (collecting cases).

Accordingly, plaintiff's Fourteenth Amendment procedural due process claim must be dismissed.

## CONCLUSION

Defendants' partial motion to dismiss is GRANTED.

Plaintiff's Eighth Amendment excessive force claim against defendant Morrissey in his individual capacity shall proceed.

All other claims are dismissed.  The Clerk is instructed to terminate defendants Russo, Rosinsky, Watkins, Kopp, and Rodriguez from the docket.

The Clerk is further instructed to terminate the motion.  (Doc. #64).

Defendant Morrissey shall file an answer to the SAC by May 14, 2024.

By separate Order, the Court will schedule an initial conference.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal taken from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions cited herein to plaintiff at the address on the docket.

Dated:  April 30, 2024
        White Plains, NY

                          SO ORDERED:

                          Vincent L. Briccetti
                          United States District Judge